IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re 1250 OCEANSIDE PARTNERS,<br><br>　　　　　　Debtor.<br>_____<br><br>1250 OCEANSIDE, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>ROGER ARNOLD BUCKLES,<br>Individually and as Trustee of the Roger<br>Arnold Buckles and Cindy Kiyono<br>Buckles Revocable Family Trust dated<br>October 29, 1991; CINDY KIYONO<br>BUCKLES, individually and as Trustee<br>of the Roger Arnold Buckles and Cindy<br>Kiyono Buckles Revocable Family Trust<br>dated October 29, 1991,<br><br>　　　　　　Defendants. | Civ. No. 16-00585 JMS-KSC<br><br>AMENDED ORDER ADOPTING<br>AMENDED PROPOSED FINDINGS<br>OF FACT AND CONCLUSIONS OF<br>LAW ON MOTIONS TO DISMISS<br>AND FOR SUMMARY<br>JUDGMENT |

## AMENDED ORDER ADOPTING AMENDED PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

On May 11, 2017, the court issued an "Order Adopting Amended

Proposed Findings of Fact and Conclusions of Law on Motions to Dismiss and for

Summary Judgment" ("May 11, 2017 Order"). ECF No. 23. On May 23, 2017,

Defendants Roger Arnold Buckles and Cindy Kiyono Buckles, individually, and in their capacities as trustees of the Roger Arnold Buckles and Cindy Kiyono Buckles Revocable Family Trust (collectively, "Defendants" or "the Buckles"), submitted pursuant to Hawaii Rule of Professional Conduct 3.3 a "Statement Re: Supreme Court Decisions on Standing in Foreclosure Actions" ("Statement").  ECF No. 24. The court construes this Statement as a Motion for Reconsideration and/or Clarification under Local Rule 60.1 of the May 11, 2017 Order.

The Statement "submits for consideration a series of recently decided Hawaii State court cases, beginning with *Bank of America, N.A. v. Reyes-Toledo*, 139 Haw. 361, 390 P.3d 1248 (2017)[.]"  ECF No. 24 at 2.  *Reyes-Toledo* reasoned that "a foreclosing plaintiff must establish entitlement to enforce the note at the time the action was commenced," 139 Haw. at 368, 390 P.3d at 1255, and is relevant towards the court's discussion of standing in its May 11, 2017 Order. Accordingly, although *Reyes-Toledo* does not change the result, the court issues this Amended Order that replaces and supersedes the May 11, 2017 Order.

## I. <u>INTRODUCTION</u>

Defendants object under 28 U.S.C. §157(c)(1) to the September 29, 2016 Amended Proposed Findings of Fact and Conclusions of Law on Motions to Dismiss and for Summary Judgment (the "Amended Findings") issued by the U.S.

Bankruptcy Court for the District of Hawaii. ECF No. 3. Similarly, Plaintiff 1250 Oceanside, LLC ("Plaintiff") has filed "limited objections" to the Amended Findings. ECF No. 6. Plaintiff was formerly known as 1250 Oceanside Partners ("the Debtor").

Based on the following, the court OVERRULES both sets of objections, and ADOPTS the Amended Findings. As recommended by the Bankruptcy Court, a Decree of Foreclosure in favor of Plaintiff shall issue.

## II. <u>BACKGROUND</u>

### A. Standard of Review

If a bankruptcy court submits proposed findings of fact and conclusions of law under § 157(c), the district court "review[s] de novo those matters to which any party has timely and specifically objected." 28 U.S.C. §157(c)(1). "The district judge shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law to which specific written objection has been made in accordance with this rule." Fed. R. Bankr. P. 9033(d).

Absent specific objections, the court reviews proposed factual findings for clear error and legal conclusions de novo. *See, e.g.*, *In re Preston*, 516 B.R. 606, 609 (C.D. Cal. 2014). That is, "[t]he district judge may accept the

portions of the findings and recommendation to which the parties have not objected as long as it is satisfied that there is no clear error on the face of the record." *Naehu v. Read*, 2017 WL 1162180, at *3 (D. Haw. Mar. 28, 2017) (citations omitted).[1]  "The district judge may accept, reject, or modify the proposed findings of fact or conclusions of law, receive further evidence, or recommit the matter to the bankruptcy judge with instructions."  Fed. R. Bankr. P. 9033(d).

The court thus focuses on the specific objections of the parties.  And because the court -- having carefully reviewed the record -- accepts and adopts the other (non-objected-to) findings, the court relies on the Amended Findings for much of the background.  In this Order adopting those Findings, the court reiterates many of the facts as found by the Bankruptcy Court, and explains the procedural history as necessary to put the issues into context.  The parties are familiar with the extensive history of this case (with an underlying bankruptcy proceeding consisting of over 1,400 docket entries, and excerpts of record in this court of over 3,000 pages), which the court need not otherwise set forth in this Order.

---

[1] Although *Naehu* evaluated Findings and Recommendations of a Magistrate Judge under Federal Rule of Civil Procedure 72, Federal Rule of Bankruptcy Procedure 9033(d) "adopts the de novo review provisions of Rule 72(b)."  Fed. R. Bankr. P. 9033(d) Advisory Committee Notes.  *See, e.g.*, *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 619-20 (8th Cir. 2009) ("[T]he Supreme Court's observation that [28 U.S.C.] section 636(b)(1) 'provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations,' *Peretz v. United States,* 501 U.S. 923, 939 [] (1991) (emphasis added), applies equally [to Bankruptcy Rule 9033(d)].").

**B.     Factual Background**

The Debtor was the developer of Hokuli'a, a planned residential subdivision on the Big Island, County of Hawaii.  ECF No. 4-1 at 5.  On March 6, 2013, the Debtor filed for bankruptcy under Chapter 11 of the United States Bankruptcy Code, and filed the present adversary proceeding in that bankruptcy action.  Amended Findings at 5.  Among other relief, the adversary proceeding seeks to enforce a promissory note and foreclose a mortgage made by the Buckles. *Id.* at 1, 5; *see also* ECF No. 4-1.  The proceeding arises out of a February/March 2000 transaction in which the Debtor financed and sold a lot in Hokuli'a to the Buckles.  ECF No. 4-1 at 2-3, 5-6.

"To document the [February/March 2000] transaction, the parties executed four documents at or about the same time:  a Purchase Contract, dated February 18, 2000; a warranty deed, dated February 16, 2000; a promissory note by [the] Buckles in favor of [the Debtor], dated March 28, 2000; and a mortgage, dated February 16, 2000."  Amended Findings at 2 (citations omitted); ECF No. 1-1 at 2.  This Order refers to the March 28, 2000 promissory note as "the Buckles' note," or simply as "the note."  The Buckles borrowed $680,000 from the Debtor in this transaction.  ECF No. 4-1 at 5.  "The Purchase Contract incorporated the note, mortgage, and warranty deed as essential parts of the agreement.  The

Purchase Contract obligated [the Debtor] to make a number of improvements on the lot and in and around the development." Amended Findings at 2 (citations omitted).

"Paragraph 17.a of the Purchase Contract requires mediation and arbitration of all disputes relating to the Purchase Agreement, the sale of the lot, or 'any other aspect of the relationship' between [the Debtor] and [the Buckles]." Amended Findings 2-3 (citation omitted). "Paragraph 17.b, however, provides that, if [the] Buckles default under the note or mortgage, [the Debtor] is not required to arbitrate, but instead 'has the absolute right' to 'seek to foreclose on the property covered by the Mortgage by a foreclosure action filed in the Circuit Court of the Third Circuit, State of Hawaii,' or 'seek to foreclose on the property covered by the Mortgage by a non-judicial foreclosure[.]'" *Id.* at 3 (citations omitted).[2]

---

[2] In full, paragraph 17.b provides:

Notwithstanding anything else in this Paragraph 17 to the contrary, in the event that Buyer defaults on Buyer's obligations under the Promissory Note or the Mortgage in favor of Seller, if any, Seller shall have the absolute right to seek the following remedies with regard to such default without first resorting to arbitration under the provisions of this Paragraph 17:

(1)     Judicial Foreclosure.  Seller may seek to foreclose on the property covered by the Mortgage by a foreclosure action filed in the Circuit Court of the Third Circuit, State of Hawaii, under Chapter 667, Hawaii Revised Statutes, as amended from time to time, and

(2)     Non-Judicial Foreclosure.  Seller may seek to foreclose on the property covered by the Mortgage by a non-judicial foreclosure,

(continued . . . )

"The deed includes dispute resolution provisions that are almost identical to the Purchase contract." *Id.* And "[t]he mortgage [also] gives [the Debtor] the right to pursue judicial or nonjudicial foreclosure." *Id.*

"In 2006, Oceanside granted a security interest in [the] Buckles' note and mortgage (along with others') to Textron Financial Corporation ('Textron') to secure [the Debtor's] obligations under a revolving line of credit." *Id.* at 4 (citation omitted). "The security agreement permits [the Debtor] to enforce the Buckles['] note and use the proceeds to pay its debt to Textron (unless [the Debtor] defaulted in its obligations to Textron, in which event Textron could take collection action against [the] Buckles directly)." *Id.* (citation omitted).

"[The Debtor] also indorsed [the] Buckles' note and assigned [the] Buckles' mortgage to Textron." *Id.* (citation omitted). "Although the endorsement

---

(. . . continued)

> power of sale foreclosure, power of sale, or power of sale remedy under Chapter 667 Hawaii Revised Statutes, as amended from time to time, and the terms of the Mortgage.
>
> Buyer hereby waives any right that Buyer might otherwise have to stay either such remedy pending the resolution of any arbitrable disputes under this Paragraph 17. Regardless of whether Seller is awarded or denied either of the foregoing remedies, all issues relating to monetary damages or costs of any type relating to disputes that are subject to arbitration under this Paragraph shall continue to be subject to arbitration as provided herein, and the arbitrator(s) shall have sole and exclusive jurisdiction to decide all such matters.

Purchase Contract at 7, ECF No. 4-6 at 114.

and assignment are absolute on their face, the Textron loan agreement makes it clear that the transfers were intended for security purposes only." *Id.* "Later, Textron assigned its interest in the notes and mortgages to Sun Kona Finance II ('SKF II')." *Id.* (citation omitted). "SKF II is in possession of the Buckles' note." *Id.* (citation omitted).

The Debtor "failed to complete the Hokuli'a development as promised." *Id.* at 5. Presumably because of this failure, the Buckles "ceased payment on the note in 2009." *Id.* (citation omitted). "On April 1, 2012, [the] Buckles signed a release, which discharged their claims against [the Debtor]." *Id.* (citation omitted).[3] "After signing the release, [the] Buckles did not resume payments on the note." *Id.* (citation omitted).

## C. Procedural Background

After the Debtor filed for bankruptcy, it "sent [the] Buckles a demand letter declaring default and requiring [the] Buckles to cure its arrears." *Id.* Further, "[the Debtor] and SKF II entered into a stipulation, in which SKF II assigned its interest in the note and mortgage 'to the extent necessary to allow [the Debtor] to

---

[3] Although the April 1, 2012 release refers to a "Litigation Settlement Agreement," ECF No. 4-5 at 31, it is unclear what claims were released. In this regard, this Court agrees with the Bankruptcy Court's finding that it need not address the release at this stage. *See* Amended Findings at 15 n.4 ("Based on my interpretation of the dispute resolution provisions of the Purchase Contract, I need not decide this issue [regarding the effect of the release] now.").

commence and litigate to completion foreclosure actions against non-performing borrowers.'" *Id.* (citation omitted).

The Debtor then filed this adversary proceeding, seeking to enforce the note, and to foreclose. *Id.* It filed similar actions against other non-performing mortgagors, based on similar contractual agreements. *See, e.g.*, *1250 Oceanside Partners v. Maryl Grp., Inc., et al.*, Civ. No. 13-00613 LEK-KSC (D. Haw. filed Nov. 13, 2013) (reviewing Adversary Proceeding No. 13-90049 in the Debtor's chapter 11 action) ("*Maryl Group*").

To that end, on September 26, 2013, the Debtor filed a Motion for Summary Judgment in the Bankruptcy Court, seeking a finding that the Buckles were in default, and an interlocutory decree of foreclosure. ECF No. 4-4. In response, the Buckles filed a Motion to Dismiss, contending (among other arguments) that contractual language required the foreclosure proceedings to take place in the Third Circuit Court for the State of Hawaii ("State Court"), not in the Bankruptcy Court. ECF No. 4-3.

Ruling on the Cross-Motions, the Bankruptcy Court issued Proposed Findings of Fact and Conclusions of Law on December 19, 2013 ("December 19, 2013 Findings"). ECF No. 4-18. Among other rulings, the Bankruptcy Court indeed found the Buckles in default and recommended entry of an interlocutory

decree of foreclosure. *Id.* at 2. It also concluded that it had jurisdiction over the matter under 28 U.S.C. § 1334(b), as a proceeding "related to cases under title 11." *Id.* at 6. The Bankruptcy Court rejected the Buckles' argument that the foreclosure proceedings must occur in State Court, concluding that the Debtor "may seek judicial foreclosure in any court with jurisdiction to preside over a mortgage foreclosure of the subject property." *Id.* at 11. It had ruled identically in a Report and Recommendation of November 13, 2013 in *Maryl Group*, ECF No. 19-1, and a challenge to that Report and Recommendation was pending at that time before another judge in this District. *See Maryl Group* (ECF No. 1-1 at 11, in Civ. No. 13-00613 LEK-KSC).

On January 13, 2014, that District Judge rejected the Report and Recommendation in *Maryl Group*, and dismissed that adversary proceeding without reaching the merits. ECF No. 20-1. That Judge determined -- contrary to the Bankruptcy Court's view expressed in *Maryl Group*, and in the December 19, 2013 Findings in the Buckles' adversary proceeding -- that the plain language of the relevant documents required foreclosure proceedings to be held in State Court. *Id.* at 10. The Debtor appealed that decision to the Ninth Circuit Court of Appeals. *See Maryl Group* (ECF No. 11 in Civ. No. 13-00613 LEK-KSC). Given the pendency of that appeal in *Maryl Group*, the Bankruptcy Court stayed the Buckles'

adversary proceeding on February 14, 2014 (upon stipulation between the Debtor

and the Buckles) to allow the Ninth Circuit to decide the common question

regarding venue for the Debtor's foreclosure actions.  *See* ECF No. 1-6 at 6

(Stipulation and Order Staying Proceedings Pending Appeal).

Meanwhile, the Bankruptcy Court continued to adjudicate the

Debtor's chapter 11 action, and on June 2, 2014, confirmed the Debtor's plan of

reorganization.  ECF Nos. 19-2 & 19-3 ("the Plan").  The 83-page Plan (exclusive

of exhibits) included a provision stating that "[a]s of the Effective Date  . . . [the

Debtor] shall be converted from a Hawaii limited partnership to a Delaware

member-managed limited liability company.  The name of the reorganized

[Debtor] shall be 1250 Oceanside, LLC."  Plan at 46, ECF 19-3 at 4.  The Plan also

contained a "Retention of Jurisdiction" provision, stating in part:

> Notwithstanding the entry of the Confirmation Order or
> the occurrence of the Effective Date, the Bankruptcy
> Court shall retain jurisdiction over the Chapter 11 Cases
> and any of the proceedings related to the Chapter 11
> Cases pursuant to section 1142 of the Bankruptcy Code
> and 28 U.S.C. § 1334 to the fullest extent permitted by the
> Bankruptcy Code and other applicable law, including,
> without limitation, such jurisdiction as is necessary to
> ensure that the purpose and intent of the Plan is carried
> out. . . .  Without limiting the generality of the foregoing,
> the Bankruptcy Court shall retain jurisdiction for the
> following purposes:
> . . . .

(e) decide or resolve any motions, adversary
proceedings, contested or litigated matters and any other
matters and grant or deny any applications involving the
Debtor that may be pending before the Effective Date or
that may be commenced thereafter[.]

Plan at 66-67, ECF No. 19-3 at 24-25.

On March 21, 2015, the Bankruptcy Court issued an Order Approving

Final Accounting of Unsecured Creditors' Fund. *See In re 1250 Oceanside

Partners*, (Bankr. D. Haw.), Case No. 13-00353 at ECF No. 1455-1. And on June

22, 2015, the Bankruptcy Court issued a Final Decree, closing the chapter 11 case.

*Id.* at ECF No. 1464.

Nearly a year later, on June 21, 2016, the Ninth Circuit issued a

memorandum disposition in *Maryl Group* that reversed the district court, reasoning

that the contractual documents "lack[ed] language clearly designating [the State

Court] as the exclusive forum for [the Debtor's] foreclosure." *1250 Oceanside

Partners v. Maryl Grp., Inc., et al. (In re: 1250 Oceanside Partners)*, 652 F. App'x

588, 589 (9th Cir. June 21, 2016). The Ninth Circuit agreed with the Bankruptcy

Court's original position, holding that the district court erred in preventing the

Debtor from bringing a foreclosure action in the Bankruptcy Court. *Id.*

Given *Maryl Group*, the Bankruptcy Court lifted the stay in the

Buckles' adversary proceeding and revised its December 19, 2013 Findings.

Specifically, on September 29, 2016, it issued the Amended Findings, which are substantively identical to the December 19, 2013 Findings, but with appropriate revisions reflecting the subsequent proceedings in *Maryl Group*. Amended Findings at 9 ("[The] Buckles argue that the Third Circuit Court is the only proper forum for this foreclosure action. In a related adversary proceeding, the Ninth Circuit has rejected this argument.") (citing *Maryl Group*).

To summarize, the Amended Findings found and concluded as follows:

(1)　　federal jurisdiction over the foreclosure action is proper because it is "related to" the Debtor's chapter 11 action under 28 U.S.C. § 1334, *id.* at 6;

(2)　　the Debtor has standing to enforce the note and mortgage under Hawaii Revised Statutes ("HRS") § 490:3-301(ii), *id.* at 11-14;

(3)　　the Debtor has proven all the elements necessary to foreclose on the mortgage, and the Buckles' purported defense against foreclosure (based on the failure of the Defendant to complete the Hokuli'a project) was precluded by the Purchase Contract, *id.* at 15; and

(4)　　the Debtor's claims for a deficiency judgment are subject to arbitration, and -- given the particular language in the Purchase

Contract -- it was not necessary to determine at this stage of the proceedings whether the Debtor is entitled to a deficiency judgment or, if so, the amount. *Id.* at 2, 15, 17-18.

On October 12, 2016, the Buckles filed Objections in the Bankruptcy Court to the Amended Findings. ECF No. 1-6 at 8 (docket sheet for Adversary Proceeding 13-90054). Similarly, the Debtor filed its "Limited Objections" on October 13, 2016. *Id.* The parties filed corresponding Responses in the Bankruptcy Court on October 26, 2016. *Id.* Thereafter, on October 27, 2016, the Bankruptcy Court transmitted the Amended Findings to this court under 28 U.S.C. §157(c)(1). ECF No. 1. The parties filed their Objections, Responses, and Excerpts of Record in this court on November 8 and 9, 2016. ECF Nos. 3, 4, 6-9.

On January 27, 2017, the court requested supplemental briefing on a jurisdictional issue. ECF No. 14. The parties filed their supplemental briefs on February 13, 2017. ECF Nos. 17, 19-20. A hearing was held on March 3, 2017. ECF No. 21. On March 10, 2017, the parties stipulated under Federal Rule of Civil Procedure 17(a)(3) to substitute 1250 Oceanside, LLC as the Plaintiff in place of the Debtor, as 1250 Oceanside, LLC is the real party in interest. ECF No. 22.

///

///

## III. DISCUSSION

The Buckles raise three specific objections: (1) they object to the Conclusion that federal jurisdiction is proper under § 1334(b); (2) they contend that the Debtor lacks standing to foreclose, raising a related challenge to Findings regarding possession of the note; and (3) they object to entry of a foreclosure decree, arguing that they have a valid defense excusing their default, i.e., the Debtor failed to perform on the Purchase Contract by not completing the Hokuli'a project. ECF No. 3.

Plaintiff objects on limited grounds, arguing that (1) the amount of any deficiency judgment is not subject to arbitration under the Purchase Contract, and (2) the court should determine (at the current stage of the proceedings) the specific amount of the debt, and that Plaintiff would be entitled to a deficiency judgment. *See* Pl.'s Obj. 3-4, ECF No. 6-1 at 4-5 ("Plaintiff respectfully suggests that it would be preferable to have the amount of debt determined prior to foreclosure, where the mortgagee seeks to credit bid and where there appears to be no dispute of material fact.").

The court addresses each objection in turn.

///

///

**A.      The Bankruptcy Court Had, and Properly Retained, Jurisdiction**

In both the original December 19, 2013 Findings, and in the Amended

Findings, the Bankruptcy Court concluded that this adversary proceeding is

"related to" the Debtor's chapter 11 case because collection of the Buckles' debt

would reduce the Debtor's liability to SKF II and thus "alter the debtor's . . .

liabilities."  December 19, 2013 Findings at 7; Amended Findings at 6.  The

Bankruptcy Court and the parties addressed federal "related-to" jurisdiction under

an expansive formulation reiterated in *Montana v. Goldin (In re Pegasus Gold*

*Corp.)*, 394 F.3d 1189 (9th Cir. 2005) (hereinafter "*Pegasus Gold*"):

> Under this formulation, the test is whether . . . the
> outcome of the proceeding could conceivably have any
> effect on the estate being administered in bankruptcy.
> Thus, the proceeding need not necessarily be against the
> debtor or against the debtor's property.  An action is
> related to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or freedom of action
> (either positively or negatively) and which in any way
> impacts upon the handling and administration of the
> bankrupt estate.

*Id.* at 1193 (quoting *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988) (emphasis

omitted)) (adopting the "*Pacor* test" derived from *Pacor, Inc. v. Higgins*, 743 F.2d

984, 994 (3d Cir. 1984)).

Using *Pegasus Gold*, the Bankruptcy Court rejected the Buckles'

argument that the proceeding is not "related" where all the proceeds would benefit

SKF II, which is affiliated with the Debtor. The Bankruptcy Court reasoned that the adversary proceeding would generate money to repay creditors (a primary purpose of a bankruptcy case), and "[t]he fact that the proceeds will flow only to certain creditors, because those creditors' claims are secured or have priority over other claims, is irrelevant." December 19, 2013 Findings at 7; Amended Findings at 7. Moreover, it noted that it was "also conceivable that the collections could exceed SKF II's claims and produce a surplus for other creditors." *Id.* at 6; Amended Findings at 7.

This court easily agrees with the Bankruptcy Court's reasoning, at least as to the December 19, 2013 Findings. *Pegasus Gold* enunciates an extremely broad test (whether the outcome of the proceeding could conceivably have any effect on the estate), and by any measure the collection of debts to pay any legitimate creditor has an effect on the estate. And to the extent the Buckles argue that the Bankruptcy Court erred by not specifically and separately considering the adversary proceeding's impact on the "handling and administration of the bankrupt estate," there was no error. Collecting debts and paying creditors necessarily has at least some impact on the administration of the estate.

Put differently, recovery on foreclosure would have potentially benefitted the Debtor at the time. Further, the Bankruptcy Court correctly

observed that collections could exceed SKF II's claims and produce a surplus.

And even if SKF II alone could have benefitted from foreclosing on the Buckles'

note, the "the outcome of the proceeding" could still have "conceivably ha[d] any

effect on the estate being administered" and "impact[ed] upon the handling and

administration" of the estate. *Pegasus Gold*, 394 F.3d at 1193.

But the analysis arguably differs as to the Amended Findings, which

were not issued until over two years after the Plan was confirmed, and a year after

the chapter 11 action itself was closed. Generally, the test is "necessarily more

limited" in a *post*-confirmation context. *Id.* at 1194. For post-confirmation

"related-to" jurisdiction, *Pegasus Gold* limited the "*Pacor* test," and adopted the

Third Circuit's "close nexus" test that appears to focus on the confirmed plan, not

specifically on the estate. *See id.* (indicating that a "close nexus" to a confirmed

bankruptcy plan exists if a matter affects "the interpretation, implementation,

consummation, execution, or administration of the confirmed plan") (quoting *In re

Resorts Int'l, Inc.*, 372 F.3d 154, 167 (3d Cir. 2004)); *see also, e.g.*, *Battle Ground

Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1135 (9th Cir. 2010) (reasoning that

"related-to" jurisdiction did not exist over a "breach of contract action that could

have existed entirely apart from the bankruptcy proceeding and did not necessarily

depend upon resolution of a substantial question of bankruptcy law") (citations omitted)).

And in a true post-confirmation context, *Pegasus Gold* specifically rejected the argument that "jurisdiction lies because the action could conceivably increase the recovery to the creditors," reasoning that "such a rationale could endlessly stretch a bankruptcy court's jurisdiction." 394 F.3d at 1194 n.1 (citations omitted); *see also In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 107 n.3 (1st Cir. 2005) ("[T]here is authority for the proposition that the prospect of increasing the funds available to creditors, without more, is insufficient to establish related to jurisdiction in a post-confirmation case[.]") (citing *In re Craig's Stores of Tex., Inc.*, 266 F.3d 388, 391 (5th Cir. 2001)).

Nevertheless, as the Debtor points out in supplemental briefing, "[j]urisdiction is determined as of the commencement of the action." *Linkway Inv. Co. v. Olsen (In re Casamont Inv'rs, Ltd.)*, 196 B.R. 517, 521 (9th Cir. BAP 1996) (citing *In re Fietz*, 852 F.2d at 457 n.2 ("Subject matter jurisdiction should be determined as of the date that the complaint . . . was filed.") (citations omitted)). Moreover, in most contexts, subsequent events do not divest a federal court of subject-matter jurisdiction. *See, e.g.*, *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 569-70 (2004) ("[T]he general rule [is] that, for purposes of

determining the existence of diversity jurisdiction, the citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing.") (citation omitted).  And here, as analyzed above, jurisdiction was proper under § 1334(b) when the adversary action was filed.  In short, the "close nexus" test does not apply here.[4]

But this does not end the inquiry.  Because the Bankruptcy Court confirmed the Plan in June 2014 and then closed the Debtor's chapter 11 proceeding in June 2015 (well before the Amended Findings were issued in October 2016) the court must examine *retention* of jurisdiction.  "[T]he issue is not whether the bankruptcy case properly invoked jurisdiction over the adversary proceeding; it is clear that it did.  The issue is whether the bankruptcy court properly retained such jurisdiction when the bankruptcy case was dismissed."  *In re Casamont Inv'rs, Ltd.*, 196 B.R. at 521.

---

[4] The "close nexus" formulation discussed in *Pegasus Gold* (indicating that a "close nexus" to a confirmed bankruptcy plan exists if a matter affects "the interpretation, implementation, consummation, execution, or administration of the confirmed plan," 394 F.3d at 1194) applies if the action is *initially* filed after confirmation.  *See, e.g.*, *In re Enron Corp. Sec.*, 535 F.3d 325, 336 (5th Cir. 2008) (rejecting "the proposition that plan confirmation divests a District Court of bankruptcy jurisdiction over pre-confirmation claims based on pre-confirmation activities"); *In re SemCrude, L.P.*, 428 B.R. 82, 97 (Bankr. D. Del. 2010) ("[C]ases limit application of the 'close nexus' test to a 'claim or cause of action filed *post-confirmation*.'") (quoting *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 265 (3d Cir. 2004)).  Indeed, *Pegasus Gold* itself involved an action filed after plan confirmation.  394 F.3d at 1192; *see also, e.g.*, *In re Boston Regional Med. Ctr.*, 410 F.3d at 104 (analyzing action filed after confirmation); *In re Craig's Stores*, 266 F.3d at 389 (same).

Although courts refer to "a general rule [that] the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings," *Matter of Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993), "nothing in the statute governing bankruptcy jurisdiction mandates automatic dismissal of related proceedings upon termination of the underlying bankruptcy case." *Id.* (citations omitted). Rather, *Carraher v. Morgan Electronics, Inc. (In re Carraher)*, 971 F.2d 327 (9th Cir. 1992), held that "[t]he bankruptcy court may retain the case, subject to the considerations . . . [of] economy, convenience, fairness and comity." *Id.* at 328.

In this regard, "the Ninth Circuit and several other circuits have analogized [a bankruptcy court's retention of jurisdiction] to cases concerning the propriety of district courts retaining jurisdiction over pendent state law claims after federal claims have been dismissed." *In re Casamont Inv'rs, Ltd.*, 196 B.R. at 522 (footnote omitted). *See, e.g.*, *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir. 1995) ("[T]he same standards should apply to the question whether and in what circumstances to retain the supplemental (here, the adversary) claim when the main claim (here, the bankruptcy proceeding itself) is resolved."); *In re Smith*, 866 F.3d 576, 582 (3d Cir. 1989) (holding that bankruptcy courts "may consider a number of factors to determine whether jurisdiction [over a related case] should be retained. These factors include: (1) judicial economy; (2) fairness and convenience

to the litigants; and (3) the degree of difficulty of the related legal issues involved") (citation omitted). The Bankruptcy Court's decision whether to retain jurisdiction is reviewed for abuse of discretion. *See In re Casamont Inv'rs, Ltd.*, 196 B.R. at 522-23; *In re Smith*, 866 F.2d at 580.

In this case, the Bankruptcy Court did not address these considerations of "economy, convenience, fairness and comity." *In re Carraher*, 971 F.2d at 328. Its Amended Findings simply re-entered the December 19, 2013 Findings, modifying the discussion regarding venue. But it would make little sense to remand to the Bankruptcy Court now for it to articulate why it was retaining jurisdiction -- this court may, on de novo review, perform that same analysis and address whether jurisdiction was (and now should be) properly retained.[5] Indeed, "a federal court has a continuing obligation to consider the appropriateness of retaining jurisdiction throughout the course of the proceeding." *In re Casamont Inv'rs, Ltd.*, 196 B.R. at 525 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

And given the procedural history of this case, the court readily concludes when applying the *In re Carraher* factors that retention of jurisdiction

---

[5] And in fact, the parties agreed at the March 3, 2017 hearing that this court could analyze the retention of jurisdiction question without remanding, and that it would further judicial economy for this court to do so in this instance.

was and is proper.  The underlying dispute between the Debtor and the Buckles arose years before Plan confirmation.  The foreclosure proceedings were contemplated in formulation of the Plan.  Although the Plan's general retention-of-jurisdiction provisions would not extend indefinitely, the adversary proceeding reasonably falls within those provisions.  *See* Plan at 67, ECF No. 19-3 at 25 (retaining jurisdiction to "decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending before the Effective Date or that may be commenced thereafter[.]").

The Bankruptcy Court stayed implementation of its December 19, 2013 Findings based on a stipulation between the parties, indicating that everyone *expected* the Bankruptcy Court to re-enter the Findings on the merits after the Ninth Circuit resolved the venue question in *Maryl Group* (even a year after closure of the Debtor's chapter 11 proceeding).  And although a foreclosure proceeding regarding Hawaii property is a matter of Hawaii law normally conducted in a State forum, it would waste judicial resources (as well as the parties') to defer to a State Court and begin again now, especially where the Bankruptcy Court has already -- twice -- made a preliminary decision regarding key aspects of foreclosure.  As *In re Casamont Inv'rs, Ltd.* reasoned, "[g]iven that

advanced state of litigation, it would be unfair to compel the parties to start over again in state court." 196 B.R. at 524. In short, it is proper to retain jurisdiction over the adversary proceeding at this advanced stage -- almost four years after the adversary proceeding was filed.

Accordingly, the court overrules the Buckles' objection as to jurisdiction. The Bankruptcy Court had "related to" jurisdiction under 28 U.S.C. § 1334(b), and it is proper to retain jurisdiction after confirmation of the Plan and closure of the chapter 11 case.

## B.    Plaintiff has Standing to Enforce the Note

The Buckles claim that the Debtor lacks standing, challenging certain Findings relevant to whether the Debtor may enforce the note and bring this foreclosure action. They argue that there is no proof that, as found by the Bankruptcy Court, "SKF II is in possession of the Note" (a predicate to the Debtor having standing). Defs.' Obj. at 10, ECF No. 3 at 14 (referring to Amended Findings at 4). And they contend -- although they apparently did not argue the point to the Bankruptcy Court -- that "there is a distinct possibility of pre-petition manipulation of the debt between the various Sun Kona entities and [the Debtor] . . . for the purpose of giving [the Debtor] 'standing' to prosecute the enforcement

of the promissory notes." Defs.' Obj. at 10, ECF No. 3 at 14. These arguments
fail.

Standing to enforce the note is determined under HRS § 490:3-301,
which defines a "person entitled to enforce" an instrument as:

(i) the holder of the instrument,

(ii) a nonholder in possession of the instrument who has
the rights of a holder, or

(iii) a person not in possession of the instrument who is
entitled to enforce the instrument pursuant to section
490:3-309 or 490:3-418(d).

The Amended Findings determined that the Debtor had standing
under HRS § 490:3-301(ii). The Bankruptcy Court extensively examined each of
the section's elements, finding that the Debtor (1) was a nonholder, (2) had the
rights of a holder, and (3) had "possession" of the note under an agency theory --
even though SKF II had physical possession, it was an agent of the Debtor.
Amended Findings at 11-14.

The undisputed record demonstrates that the Debtor indorsed the note
and assigned the mortgage to Textron. *See* ECF No. 4-6, at 92 (Endorsement) &
93 (Allonge Endorsement). Undisputed evidence also indicates that Textron later
assigned its interest in the note and mortgage to SKF II. *See* ECF No 4-15, at 82-
88 ("Omnibus Assignment and Assumption"); *id.* at 90-92 ("Assignment of

Pledged Notes Receivable"). These endorsements and assignment occurred in January 2013, before the adversary proceeding was filed on July 26, 2013. *See* ECF No. 4-6 at 93; ECF No. 4-15 at 84, 91. The record thus sufficiently establishes that SKF II was in possession of the note, as the Bankruptcy Court found. Amended Findings at 4, 13. And the Hawaii Intermediate Court of Appeals recently confirmed that, for purposes of enforcement of a note under HRS § 490:3-301, possession under an agency theory is sufficient. *See Bank of Am., N.A. v. Anderson*, 139 Haw. 293, 389 P.3d 130, 2017 WL 122998, at \*5 (Haw. Ct. App. Feb. 23, 2017) (mem.) ("[The Bank's] assertion that it possesses the Note 'directly or through an agent' is sufficient to establish its right to enforce the Note."). In short, the record adequately supports the Bankruptcy Court's conclusion that the Debtor had standing under HRS § 490:3-301(ii).

In any event, on March 10, 2017, the parties stipulated (and the court ordered) that 1250 Oceanside, LLC, be substituted as Plaintiff in place of the Debtor. ECF No. 22 at 3. This substitution was based on the fact that, as part of the Plan, the Debtor (1250 Oceanside Partners) was converted to 1250 Oceanside, LLC on June 18, 2014. *See id.* at 6-7. As a practical matter, this substitution is important because the undisputed record also establishes that on December 21, 2016, SKF II (among other entities) was merged into 1250 Oceanside LLC. ECF

No. 17-6 at 1-3 (certificates of merger from State of Delaware).  It follows that

Plaintiff 1250 Oceanside, LLC holds the note and is entitled to enforce it under

HRS § 490:3-301(i) -- regardless of the finding that the Debtor had standing under

§ 490:3-301(ii).[6]

---

[6] "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citation omitted).  Thus, like jurisdiction generally, "[s]tanding is determined by the facts that exist at the time the complaint is filed." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992)); *see also, e.g.*, *Bank of Am., N.A. v. Reyes-Toledo*, 139 Haw. 361, 368, 390 P.3d 1248, 1255 (2017) ("As standing relates to the invocation of the court's jurisdiction, it is not surprising that standing must be present at the commencement of the case.") (citation omitted).  And under Hawaii law specifically in a foreclosure context, "a foreclosing plaintiff must establish entitlement to enforce the note at the time the action was commenced[.]" *Reyes-Toledo*, 139 Haw. at 368, 390 P.3d at 1255.

In this regard, *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376 (9th Cir. 1988), stated that "[i]f jurisdiction is lacking at the outset, the district court has no power to do anything with the case except dismiss." *Id.* at 1380 (internal quotation marks and citations omitted).  Nevertheless,

> it is now clear, if it was not then, that this rule is more nuanced than the inflexibility suggested by [*Morongo*'s] language -- both as it relates to curing jurisdictional defects through supplemental pleadings, and other circumstances in which defects in subject-matter jurisdiction were cured by the substitution, addition, or elimination of a party.

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 779 F.3d 1036, 1046 (9th Cir. 2015) (citations omitted); *see also Cal. Credit Union League v. City of Anaheim*, 190 F.3d 997, 1000 (9th Cir. 1999) ("[A]ppellate courts may join a party as a plaintiff to cure a jurisdictional defect when the joinder will promote judicial economy and not prejudice the defendant.").  Further, "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000).

Here, the substitution of 1250 Oceanside, LLC as the real party in interest would appear to have cured any jurisdictional defect based on the Debtor's alleged lack of standing because the substitution would relate back to the filing of the action in July 2013.  *See* Fed. R. Civ. P. 17(a)(3) ("After . . . substitution, the action proceeds as if it had been originally commenced by the real party in interest."); 6A Charles A. Wright, et al., *Federal Practice and Procedure*

(continued . . . )

**C.      The Bankruptcy Court Correctly Found the Buckles in Default; a Foreclosure Decree Shall Enter**

The Buckles object to the entry of a decree of foreclosure, raising as a defense the Debtor's failure to perform on the Purchase Contract. As the Amended Findings determined, however, the Buckles' position is contrary to the plain and explicit language of the Purchase Contract, which precludes this argument. Under the Purchase Contract, the parties chose separate tracks for these types of disputes. In this regard, the court adopts the Amended Findings nearly wholesale as follows:

Under Hawaii law, a foreclosing mortgagee must prove "'(1) the existence of the [loan] Agreement, (2) the terms of the Agreement, (3) default by [the mortgagor] under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect.'" *In re Metro. Mortg. & Sec., Co., Inc.*, 448 B.R. 527, 533 (D. Haw. 2011) (citing *IndyMac Bank v. Miguel*, 117 Haw. 506, 520, 184 P.3d 821, 835 (Haw. Ct. App. 2008)).

---

(. . . continued)

§ 1555, at 569-70 (2010) ("Rule 15(c) has been used in conjunction with Rule 17(a) to enable an amendment substituting the real party in interest to relate back to the time the original action was filed. The same result could have been reached solely on the basis of the last sentence in Rule 17(a)."); *Besig v. Dolphin Boating & Swimming Club*, 683 F.2d 1271, 1278 (9th Cir. 1982) ("Notice from a previous complaint seldom is adequate when substituting plaintiffs, unless the change merely brings in the real party in interest or accomplishes some similar technical result."). But the court need not rely on this ground -- as noted above, the Debtor had standing even before the substitution of 1250 Oceanside, LLC.

Plaintiff has proven all of these elements and the Buckles do not deny any of them. Their defenses to the foreclosure are based entirely on the Debtor's failure to develop the Hokuli'a project as the Purchase Contract requires. But the Purchase Contract precludes the Buckles from defending against a foreclosure on that basis. Specifically, paragraph 17 of the Purchase Contract provides that the Buckles' claims against the Debtor would be decided separately from foreclosure claims, and that the Buckles would not use their claims to stay a foreclosure:

> [The Buckles] hereby waive[] any right that [they] might otherwise have to stay either such [foreclosure] remedy pending the resolution of any arbitrable disputes under this Paragraph 17. Regardless of whether [the Debtor] is awarded or denied either of the foregoing [foreclosure] remedies, all issues relating to monetary damages or costs of any type relating to disputes that are subject to arbitration under this Paragraph shall continue to be subject to arbitration as provided herein, and the arbitrator(s) shall have sole and exclusive jurisdiction to decide all such matters.

Purchase Contract at 7, ECF No. 4-6 at 114.

In short, allowing the Buckles to assert the Debtor's alleged breaches of the Purchase Contract as a defense to the Debtor's foreclosure claim would circumvent the parties' agreement to decide their disputes on two separate tracks.

///

///

**D.      Plaintiff's Claims Regarding a Deficiency Judgment Are Premature**

Finally, Plaintiff's "limited objection" challenges the Bankruptcy Court's findings (1) that it is not necessary, at this stage, to determine the exact amount of debt, claiming that "it would be preferable" to know that amount now since it intends to "credit bid" in subsequent foreclosure proceedings, Pl.'s Obj. at 3; ECF No 6-1 at 4; (2) that the court "should refrain, for the time being, from determining whether [Plaintiff] is entitled to a deficiency judgment," Amended Findings at 15; and (3) that the amount of any deficiency judgment is subject to arbitration under the Purchase Contract. *Id.* This court, however, agrees with the Bankruptcy Court.

As *Bank of Honolulu, N.A. v. Anderson*, 3 Haw. App. 545, 654 P.2d 1370 (1982), explains:

> HRS § 667- 1 [("Foreclosure by action")] merely . . . confer[s] "specific authority to render a deficiency judgment, as an incident to the foreclosure" (emphasis added).  2 Committee on Coordination of Rules and Statutes, Report of Committee on Coordination of Rules and Statutes (1971).  Thus, HRS § 667-1 does not require the determination of a sum certain before foreclosure is decreed since a deficiency judgment is rendered only after the sale of the mortgaged property.

*Id.* at 549, 654 P.2d at 1374 (emphasis and footnote omitted).  Under Hawaii law, "[t]o be entitled to a decree of foreclosure, the [mortgagee is] required to prove

[mortgagor's] default.  It [is] not required to prove the exact amount owed . . . until after the confirmation of the foreclosure sale."  *Id.* at 550, 654 P.2d at 1374.  *See also, e.g.*, *IndyMac Bank*, 117 Haw. at 520, 184 P.3d at 835 ("The material inquiry relevant to a foreclosure decree is whether a default occurred, not the amount owed.").

The Purchase Contract's broad arbitration clause requires mediation and arbitration of "any dispute by or between [the Debtor and the Buckles] . . . arising out of or incident to . . . the sale of any Lot . . . or any other aspect of the relationship between [them]."  Purchase Contract at 7, ECF No. 4-6 at 114.  The narrow *exception* to arbitration is only for the Debtor to "seek to foreclose on the property" through either a judicial or non-judicial foreclosure action.  *Id.*  Further, it is undisputed that a non-judicial foreclosure would *not* include a right to a deficiency judgment.

It follows that, under the particular contractual language at issue here, the right to a deficiency judgment is not excluded from arbitration.  This is so even if liability for a deficiency judgment necessarily follows in a judicial foreclosure action, and even if such a declaration may be included in a foreclosure decree.  *See, e.g.*, *Beneficial Haw., Inc. v. Casey*, 98 Haw. 159, 165, 45 P.3d 359, 365 (2002) (distinguishing between "*liability* for the deficiency judgment" and "the

*amount* of the deficiency following subsequent entry of final orders in the proceedings"). That is, the right to a deficiency judgment exists as a matter of law in this action; it is, however, a matter to be decided in conjunction with determining the amount of a deficiency judgment (if any), which is subject to arbitration. And it is certainly premature to address the amount of a deficiency judgment -- a sale has not occurred, the amount of sale remains hypothetical, and whether the debt plus other expenses will exceed the sale amount is unknown (even if it is likely). For those reasons, the court OVERRULES Plaintiff's limited objections.

Lastly, as to whether the Bankruptcy Court should actually enforce the arbitration agreement, the court adopts the Bankruptcy Court's conclusion that it has "discretion to decline to enforce arbitration agreements in certain circumstances." Amended Findings at 18. *See Cont'l Ins. Co. v. Thorpe Insulation Co.* (*In re Thorpe Insulation Co.*), 671 F.3d 1011, 1021 (9th Cir. 2012) (holding that "a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code") (citations omitted). Because the Bankruptcy Court "express[ed] no opinion on whether the arbitration agreement should eventually be enforced," Amended Findings at 18, this court agrees that:

It is sufficient for present purposes to say that (1) [Plaintiff's] claims for foreclosure are not subject to arbitration, (2) [Plaintiff's] claims for a deficiency judgment are subject to arbitration unless the [Bankruptcy] court decides not to enforce the arbitration provision by virtue of bankruptcy law, and (3), in any event, the two claims should be decided separately.

*Id.*

## IV. CONCLUSION

The court OVERRULES objections from both parties, and ADOPTS the Amended Findings. As recommended by the Bankruptcy Court, a decree of foreclosure in favor of Plaintiff shall enter.

Although the Bankruptcy Court recommended "that the District Court enter judgment accordingly," Amended Findings at 2, the court interprets the Bankruptcy Court's recommendation as contemplating further proceedings to implement such a decree of foreclosure, and to further address issues regarding a deficiency judgment (and at least to address whether the arbitration provisions should not be enforced by virtue of bankruptcy law). *Id.* at 15, 18.

In this regard (as set forth in the May 11, 2017 Order), Plaintiff is directed to file a proposed form of a Foreclosure Decree by **May 26, 2017**. By **June 2, 2017**, Defendants may file objections, if any, to the proposed form of the Foreclosure Decree. After the Foreclosure Decree is entered, the Clerk of Court

shall close the case file and the matter shall be remanded to the Bankruptcy Court

for further proceedings consistent with this Order.

IT IS SO ORDERED.

DATED, Honolulu, Hawaii, May 25, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*1250 Oceanside Partners v. Buckles et al.*, Civ. No. 16-00585 JMS-KSC, Amended Order
Adopting Amended Proposed Findings Of Fact And Conclusions Of Law On Motions To
Dismiss And For Summary Judgment